UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TARA PERINO                  :
                             :
                             :
                             :
v.                           :    CIV. NO. 3:13CV1411 (JBA)
                             :
EDIBLE ARRANGEMENTS          :
INTERNATIONAL, INC. and      :
TARIQ FARID                  :

RULING ON MOTION TO COMPEL AND FOR ATTORNEYS' FEES AND COSTS
[DOC. #68]

Pending before the Court is a motion by plaintiff Tara Perino to compel defendant Edible Arrangements International, Inc. ("defendant") to produce documents in response to her second set of requests for production dated November 26, 2014. [Doc. #68]. Plaintiff also seeks payment of her reasonable expenses incurred in making the motion, including attorneys' fees and costs. [Doc. #68]. Defendant opposes the motion. [Doc. #75]. On March 2, 2015, the Court held an in-person discovery conference addressing the issues raised in plaintiff's motion, among others.[1] For the reasons articulated below, plaintiff's motion to compel and for attorneys' fees and costs is **GRANTED in part and DENIED in part**.

**A.    Background**

Plaintiff brings this employment discrimination action pursuant to Title VII, 42 U.S.C. § 1981 and the Connecticut Fair Employment Practices Act alleging that defendant and its CEO

---

[1] Defendants provided an agenda for the conference dated February 26, 2015. As stated on the record, the first agenda item regarding preclusion of an affidavit and related evidence should be raised with Judge Arterton. Defendants withdrew agenda item two. Defendants did not raise agenda item three.

1

Tariq Farid (collectively "defendants") harassed and terminated plaintiff's employment due to her gender, national origin, race and religion. Plaintiff alleges that, "defendants developed and maintained a workplace in which women are treated in a disrespectful and chauvinistic manner, and in which persons of a South Asian ethnic background and persons known or perceived to be adherents to the Muslim faith receive favorable treatment." [Doc. #68-2, 3]. Mr. Farid is a "devout Muslim." [Id.]. Plaintiff is a "white non-Muslim female," who worked for defendant from May 2011 to September 2012 as Controller. [Id.; see also Doc. #75, 3]. Plaintiff claims that her employment was terminated after she brought complaints of discriminatory treatment and hostile atmosphere. [Doc. #68-2, 4]. Defendants contend that plaintiff's employment was terminated "because she created, edited, and supervised the creation of offline invoices relating to one of Defendant's master franchisees, Al Braik Investments, LLC, in an archived accounting system and then presented the offline invoices to Mr. Farid on September 24, 2012." [Doc. #75, 3]. Defendants further contend that these actions "were grossly irresponsible for a Controller of an audited company, and her acts compromised the integrity and reliability of Defendant's accounting records." [Id.].

**B.  <u>Legal Standard</u>**

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

party.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).  Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery.  See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988). "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

C.   **Discussion**

The present dispute arises from plaintiff's second set of requests for production dated October 24, 2014, to which defendant provided its responses and objections on November 26, 2014. Plaintiff seeks to compel responses to three general categories of requests: (1) documents concerning the invoicing of franchise fees and royalty payments for international accounts; (2) documents relating to an external "forensic audit" of the conduct and damage allegedly caused by plaintiff engaging in willful misconduct; and (3) documents relating to the alleged incorporation of the Muslim religion into defendant's workplace practices. The Court will address each category in turn.

1. **Documents re: invoicing of franchise fees/royalty payments for international accounts (Requests 2, 4, 5, 7, 8, and 12)**

Defendant seeks to compel documents responsive to requests 2, 4, 5, 7, 8, and 12 that generally relate to the invoicing of franchise fees and royalty payments for international accounts. Plaintiff argues that these requests are "designed to explore the retaliatory allegations alleged against plaintiff." [Doc. #68-2, 11].

The Court turns first to requests 2 and 4, and defendant's objections and responses thereto.

**Request 2**: All emails and other documents created between April 1, 2012 through the date of plaintiff's termination commenting upon or discussing international franchise royalty or fee collections, invoicing, or plaintiff's performance relating to same.

**Objection**: In addition to the general objections, Defendant objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to the term "all" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects because this request is duplicative of several other Requests. Defendant objects to the phrase "commenting upon or discussing" because it is vague, ambiguous, and subject to multiple interpretations. Defendant also objects to this Request to the extent it calls for the production of information or documents protected by the attorney-client privilege or work-product doctrine.

**Response**: Subject to and without waiving the foregoing objections, see documents already produced.

**Request 4**: All documents concerning or relating to plaintiff's action or inaction vis-à-vis (a) the invoicing, monitoring or collection of any international franchise royalties or fees, (b) her communication or lack of communication concerning the invoicing, monitoring or collection of any international franchise royalties or fees.

**Objection**: In addition to the general objections, Defendant objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to the term "all" as overbroad, unduly burdensome, and not reasonably

calculated to lead to the discovery of admissible evidence. Moreover, the Request is unlimited in temporal scope and not limited to any timeframe relevant to Plaintiff's allegations. Defendant also objects because this Request is duplicative of several other Requests. Defendant also objects to this request to the extent it calls for the production of information or documents protected by the attorney-client privilege or the work-product doctrine.

**Response**: Subject to and without waiving the foregoing objections, see documents already produced.

[Doc. #68-1, 4-6]. At the March 2 conference, plaintiff argued that she is entitled to a certification that all documents have been produced in response to these requests. Plaintiff's counsel also agreed to narrow request 2 to documents that "reference" plaintiff and clarified that he is seeking documents showing whether plaintiff performed her job. Defendant stands on its objections and further noted the broad swath of documents these requests potentially implicate. Defendant submits that documents concerning plaintiff's performance and termination have already been produced in connection with her prior discovery requests.

Turning first to Request 2, even with plaintiff's agreement to narrow this request to documents referencing plaintiff, it is substantively overbroad. Indeed, even as narrowed, it implicates a potentially huge number of documents that are not relevant to the claims or defenses in this litigation. The Court does not see the relevance of every day-to-day email or other documents that may reference the plaintiff. To the extent defendant represents that all documents concerning plaintiff's performance and termination have been produced, defendant will provide a sworn statement that after a diligent search, all documents concerning plaintiff's performance and termination have been produced. See Napolitano v. Synthes USA, LLC, 297 F.R.D. 194,

200 (D. Conn. 2014) (noting that a response that all documents have been produced <u>does</u> require attestation); <u>see also</u> <u>id.</u> (citation omitted) ("When a party claims that the requested documents have already been produced, it must indicate that fact under oath in response to the request. Nevertheless, if the party fails to make a clear and specific statement of such compliance under oath, the court may order it to produce documents."); <u>Vazquez-Fernandez v. Cambridge College, Inc.</u>, 269 F.R.D. 150, 154 (D.P.R. 2010) (supplemental response to request for production, which stated that all documents had been produced, was "an answer" that required signature under oath by party). Accordingly, plaintiff's motion to compel is GRANTED in part, to the extent she seeks a certification that all documents have been produced.

Request 4 is similarly overbroad in both temporal and substantive scope. As represented by defendant, it terminated plaintiff's employment "because she created, edited, and supervised the creation of offline invoices relating to one of Defendant's master franchisees, Al Braik Investments, LLC, in an archived accounting system and then presented the offline invoices to Mr. Farid on September 24, 2012." [Doc. #75, 3]. Accordingly, the invoicing for any other accounts on which plaintiff worked likely are not relevant to the defense of this case. Therefore, to the extent defendant has not already done so, it will produce all non-privileged documents relating to plaintiff's alleged creation of offline invoices relating to Al Braik Investments, LLC for the time period of May 2011 through

September 24, 2012. If defendant has already produced all documents responsive to this request, as narrowed by the Court, it will provide plaintiff with a sworn statement that after a diligent search, all such documents have been produced. Therefore, the Court GRANTS in part plaintiff's request to compel the production of documents in response to request 4.

Plaintiff next seeks to compel the production of documents to request 5.

> **Request 5**: All documents concerning or relating to actual or possible changes or improvements upon the process in place to collect international franchise royalties or fees, including but not limited to any presentation, audit, suggestion or analysis of the collection or invoicing process by Sonia Mahmood as referenced in defendant's supplemental interrogatory response dated September 29, 2014, Interrogatory No. 15.

> **Objection**: In addition to the general objections, Defendant objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to the term "all" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the Request is unlimited in temporal scope and not limited to any timeframe relevant to Plaintiff's allegations. Defendant also objects because this Request is duplicative of several other Requests. Defendant also objects to this request to the extent it calls for the production of information or documents protected by the attorney-client privilege or the work-product doctrine.

[Doc. #68-1, 5-6]. Defendant further responded that, "it is not in possession of the alleged 'presentation' by Sania Mahmood." [Doc. #75, 15 (sic)]. Defendant confirmed this position at the March 2 conference. Defendant also represented that it made changes to the collection process after plaintiff's termination, and that any such documents relating thereto are irrelevant. The Court finds that the request as phrased is overbroad in temporal scope. This request also seeks irrelevant information in light

of defendant's representations at the March 2 conference and the reason(s) proffered for plaintiff's termination. Accordingly, the Court generally SUSTAINS defendant's objections.

Plaintiff next seeks the production of documents responsive to request 7.

> **Request 7**: All documents created during the period January 1, 2012, through January 1, 2014 concerning or relating to the invoicing, payment or nonpayment of franchise royalties by Al Braik Investments, including all invoices created or worked upon by Vicki Beecher.
>
> **Objection**: In addition to the general objections, Defendant objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to the term "all" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The Request is incredibly overbroad as it seeks all documents "concerning or relating to the invoicing, payment or nonpayment of franchise royalties or fees by, Al Braik Investments" in general, whether or not the documents have any bearing on Plaintiff's discrete claims of discrimination or retaliation. This request could potentially encompass hundreds if not thousands of documents that in no way relate to her discrete allegations of discrimination or retaliation, but only relate to routine work issues. Defendant also objects to the temporal scope of the Request as it is not limited to the relevant timeframe. Defendant also objects because this Request is duplicative of several other Requests. Defendant also objects to this request to the extent it calls for the production of information or documents protected by the attorney-client privilege or the work-product doctrine.
>
> **Response**: Subject to and without waiving the foregoing objections, see documents already produced.

[Doc. #68-1, 7-8]. At the March 2 conference, defendant represented that it had already produced the QuickBooks invoices at issue in this litigation. Defendant contends that any other invoices are irrelevant. At the March 2 conference, plaintiff's counsel represented that Vicky Beecher testified that she created the invoices at issue. Defendant responded that Ms. Beecher's testimony was "confused" and "not clear."

As an initial matter, the Court agrees that, to the extent this request seeks post-termination invoices, such information is not relevant to the claims in this case. The request is also substantively overbroad. Defendant represents that it has "already produced the relevant documents relating to Plaintiff's international accounting performance, including the emails, invoices, and personnel documents bearing upon her termination of employment." [Doc. #75]. The Court will also require defendant to produce any documents relating to Ms. Beecher's work on the offline invoices at issue for the period of May 2011 through September 24, 2012. After defendant makes its production, it will provide a sworn statement that after diligent search, it has produced all documents relating to (1) Plaintiff's international accounting performance, including the emails, invoices, and personnel documents bearing upon her termination of employment and (2) Ms. Beecher's work on the offline invoices at issue for the period of May 2011 through September 24, 2012. Therefore, plaintiff's motion to compel with respect to request 7 is GRANTED in part.

Plaintiff also takes issue with defendant's response to request 8.

> **Request 8**: All documents concerning or relating to authorizing plaintiff or Vicki Beecher access to QuickBooks during the period January 2012 through May 2013.

> **Objection**: In addition to the general objections, Defendant objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects because the phrase "access to QuickBooks" and the term "authorization" are vague, ambiguous, and subject to multiple interpretations. Defendant also objects to this request to the extent it calls for the production of information or

> documents protected by the attorney-client privilege or the
> work-product doctrine.
>
> **Response**: Subject to and without waiving the foregoing
> objections, Defendants are not in possession of any
> documents concerning the authorization of either Vicki
> Beecher or Plaintiff to use QuickBooks for purposes of
> invoicing of international royalty or franchise fees.

[Doc. #68-1, 8-9]. At the conference, defendant further
represented that there are no documents authorizing plaintiff or
Ms. Beecher to use QuickBooks and that, at all relevant times,
defendant prohibited its employees from using QuickBooks for
international accounting.  As an initial matter, the Court
agrees that the request is overbroad in temporal scope as it
does not entirely relate to the relevant time period.  The Court
further finds that defendant's response is proper in light of
the overbroad nature of the request. Accordingly, plaintiff's
motion to compel as to request 8 is DENIED.

Plaintiff next seeks to compel documents responsive to
request 12.

> **Request 12**: All documents concerning or relating to any
> protocol, policy or procedure regarding users of, or
> regulating access to, QuickBooks or Great Plains.
>
> **Objection**: In addition to the general objections, Defendant
> objects to this Request as overbroad, unduly burdensome,
> and not reasonably calculated to lead to the discovery of
> admissible evidence. Moreover, this Request is vague and
> ambiguous as it contains several undefined terms that are
> susceptible to multiple interpretations. Moreover, the
> Request is unlimited in temporal scope and not limited to
> any timeframe relevant to plaintiff's allegations.
> Defendant also objects to this request to the extent it
> calls for the production of information or documents
> protected by the attorney-client privilege or the work-
> product doctrine.

[Doc. #68-1, 11]. Plaintiff further responded that, "it is not
in possession, custody or control of any non-privileged,
responsive documents for the timeframe encompassing Plaintiff's

employment with Defendant." [Doc. #75, 20]. The Court agrees
that this request is overbroad in temporal scope, and finds that
defendant's response is proper. Accordingly, plaintiff's motion
to compel as to request 12 is DENIED.

**2. Documents re: forensic audit (Requests 3 and 6)**

Plaintiff next seeks to compel documents responsive to
requests 3 and 6. These requests generally relate to an external
"forensic audit" conducted by an outside accountant at the
request of defendant's in-house counsel to analyze damage
allegedly caused by plaintiff's unauthorized use of QuickBooks.

**Request 3**: All documents created incident to any internal
or external audit of actions involving plaintiff.

**Objection**: In addition to the general objections, Defendant
objects to this Request as overbroad, unduly burdensome,
and not reasonably calculated to lead to the discovery of
admissible evidence. Defendant also objects to the term
"all" as overbroad, unduly burdensome, and not reasonably
calculated to lead to the discovery of admissible evidence.
Defendant also objects because the phrases "created
incident to" and "actions involving plaintiff" because they
are vague, ambiguous, and subject to multiple
interpretations. Defendant also objects to this Request to
the extent it calls for the production of information or
documents protected by the attorney-client privilege or the
work-product doctrine.

**Request 6**: All documents provided to the outside auditor
incident to its preparation of the June 2014 forensic audit
report identified in defendants' privilege log.

**Objection**: In addition to the general objections, Defendant
objects to this Request as overbroad, unduly burdensome,
and not reasonably calculated to lead to the discovery of
admissible evidence. Defendant also objects to the term
"all" as overbroad, unduly burdensome, and not reasonably
calculated to lead to the discovery of admissible evidence.
Defendant also objects because this Request is duplicative
of several other Requests. Defendant also objects to this
Request to the extent it calls for the production of
information or documents protected by the attorney-client
privilege or the work-product doctrine.

[Doc. #68-1, 4, 7]. Plaintiff submits that the report has been
referenced as a basis for a damages claim against plaintiff and

proof of her alleged wrongdoing. Plaintiff also claims that Mr. Farid has discussed this report in public. Accordingly, plaintiff argues that defendant has placed this report in issue, that she has a substantial need for the facts set forth in the audit, and that defendant cannot use the audit as both a sword and a shield. At the March 2 conference, plaintiff also argued that defendant had not met its burden of proving that the documents sought fall within the protection of the attorney-client privilege or work-product doctrine. In addition to maintaining its position that these requests are overbroad, unduly burdensome, vague and ambiguous, defendant also submits that the audit report was prepared at the request of defendant's in-house counsel to advise defendant what action, if any, was necessary in light of plaintiff's alleged misconduct. At the conference, defendant also alleged that this report is completely irrelevant to the issues raised in this litigation and that defendants have no intention of using the audit report in this case.

Before addressing the issues of attorney-client privilege and work product protection, the Court notes that request 3 is overbroad in substantive scope. Indeed, as comptroller, plaintiff was undoubtedly "involved" in several auditing matters that are not relevant to the issues in this litigation. Accordingly, the Court will not require defendant to produce documents in response to this request as phrased.

The Court also questions the relevance of the forensic audit report in light of defendant's representations at the

12

conference that it will not rely on this report in support of its defense and that it is not seeking damages from plaintiff in this action. Indeed, it would appear to the Court that the report is more germane to the issues raised in the state court litigation[2] than those currently before this Court. Nevertheless, at the request of the Court, defendant submitted the subject audit report for an <u>in camera</u> review in light of its claims that the report, and all documents submitted to the accountant to prepare the report, are protected by the attorney-client privilege and/or work product doctrine.

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. <u>United States v. Constr. Prods. Research, Inc.</u>, 73 F.3d 464, 473 (2d Cir. 1996). The privilege is triggered by a request for legal as opposed to business advice. <u>In re Grand Jury Subpoena</u>, 731. F.2d 1032, 1037 (2d Cir. 1984). The Court construes the privilege narrowly because it renders relevant information undiscoverable; we apply it "only where necessary to achieve its purpose." <u>Fisher v. United States</u>, 425 U.S. 391, 403 (1976); <u>see</u> <u>In re Grand Jury Investigation</u>, 399 F.3d 527, 531 (2d Cir. 2005). The burden of establishing the applicability of the privilege rests with the part invoking it. <u>In re Grand Jury Proceedings</u>, 219 F.3d 175, 182 (2d Cir. 2000); <u>United States v. Int'l Bd. Of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO</u>, 119 F.3d

---

[2] Plaintiff is defending a suit brought in Connecticut state court by defendant alleging that plaintiff engaged in intentional wrongdoing related to her creation of the QuickBooks invoices. <u>See</u> Doc. #68-4, Ex. G.

210, 214 (2d Cir. 1997). The Court uses a three-pronged standard for determining the legitimacy of an attorney-client privilege claim. A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. In re County of Erie, 473 F.3 413, 419 (2d Cir. 2007); Constr. Prods. Research, Inc., 73 F.3d at 473.

"Sharing otherwise privileged communications with third parties generally waives the privilege, but the Second Circuit has recognized that the inclusion of a third party in an attorney-client communication does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, No.12-cv-585, 2014 WL 7238354, at *1 (S.D.N.Y. Dec. 19, 2014) (citations and internal quotations omitted); see also U.S. v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961) ("[T]he attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in useable form information obtained from the client."). "This exception [to the attorney-client privilege] is most often applied in the context of a translator or an accountant without whom the lawyer would be unable to provide competent legal advice." Church, 2014 WL 7238354, at *2 (citation omitted; brackets added).  As Chief

Judge Loretta A. Preska of the Southern District of New York
recently noted,

> For this rule to apply, the party asserting the privilege
> must show "(1) … a reasonable expectation of
> confidentiality under the circumstances, and (2) [that]
> disclosure to the third party was necessary for the client
> to obtain informed legal advice."  The necessity element
> goes beyond mere convenience and "requires [that] the
> involvement [of the third party] be indispensible or serve
> some specialized purpose in facilitating the attorney
> client communications. Given this high bar, the privilege
> only extends to essential third parties, such as foreign
> language interpreters or accountants who can clarify
> complex financial issues directly related to the provision
> of legal advice.

Cohen v. Cohen, No. 09 Civ. 10230 (LAP), 2015 WL 745712, at *3
(S.D.N.Y. Jan. 30, 2015) (internal citations omitted; brackets
and ellipses in original).

Considering the above case law, and after careful review of
the report, the Court is inclined to find that the report is
protected by the attorney-client privilege.  First, it is clear
from the face of the report that it was intended to remain
confidential. Defendant also represented at the March 2
conference that the report had been maintained confidential.
Moreover, defendant represents in its brief, and reiterated at
the March 2 conference, that its in-house counsel Catherine
Gilroy initiated an investigation to determine the scope of
plaintiff's offline accounting activities so that Ms. Gilroy
could provide legal advice to defendants about the consequences
of these actions and whether any further legal action was
necessary. Defendant further represents that, "In furtherance of
the investigation and to understand the scope of Plaintiff's
offline activities, Attorney Gilroy engaged an outside forensic
accounting firm to assist with the investigation of Plaintiff's

offline activities. On June 2, 2014, the outside accounting firm issued to Attorney Gilroy a report concerning its investigation of Plaintiff's offline activities." [Doc. #75, 8]. Based on these representations, and the Court's review of the report, it appears that the report "clarif[ied] complex financial issues directly related to the provision of legal advice," Cohen, 2015 WL 745712, at *3 (brackets added), and therefore is shielded from disclosure by the attorney-client privilege. However, the Court conditions this ruling on defendant providing an affidavit in support of its representations that this document is protected by the attorney-client privilege.

To the extent that plaintiff claims that the attorney-client privilege has been waived by virtue of defendants placing the report in issue and/or publicly discussing its contents, the Court is inclined to disagree.  "When a party voluntarily discloses a confidential communication with his lawyer, he waives whatever privilege may have attached previously to that communication." United States v. Jackson, 969 F. Supp. 881, 883 (S.D.N.Y. 1997) (compiling cases); see also In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 468 (S.D.N.Y. 1996) ("The attorney client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication.") (citation and internal quotations omitted; emphasis added).  It is well-settled that "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield

the underlying communications from scrutiny by the opposing party." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000). Thus, "the client's offer of his own or the attorney's testimony as to a specific communication to the attorney is ... a waiver as to all other communications to the attorney on the same matter." Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp., 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (citation and internal quotations omitted; emphasis added).

At the March 2 conference, defendant represented that it was not relying on the subject report in support of its defense and that defendant had maintained the confidentiality of the report. Further, to the extent that plaintiff relies on Mr. Farid's reference of the report to the media[3], the Court finds that the reference does not reveal the specifics of the report, and if anything, more corresponds to a party generally consulting with counsel. See Long Term Capital Holdings, Inc. v. United States, No. 3:01 CV 1290(JBA), 2003 WL 1548770, at *8 (D. Conn. Feb. 14, 2008) (noting that the "Second Circuit routinely protects communications that refer generally to the fact that a party consulted with counsel[…]"). Accordingly, the Court is not inclined to find a waiver of the attorney-client privilege. Again, however, this ruling is conditioned on defendant providing an affidavit demonstrating that the confidentiality of the report has been maintained.

---

[3] See 68-2, Ex. F ("'We had to bring in forensic accounting teams to go through our finances to assess what damage had been done,' Farid said.").

Therefore, the Court DENIES plaintiff's motion to compel as to requests 3 and 6. Because the Court finds the attorney-client privilege applicable, it need not reach the issue of work product protection.

### 3. Documents regarding the incorporation of the Muslim religion into defendant's workplace practices, events and general atmosphere (Requests 9, 10 and 11)

Plaintiff next seeks documents responsive to requests 9, 10 and 11, which generally relate to the alleged incorporation of the Muslim religion into defendant's workplace practices, events and general atmosphere.

**Request 9**: All documents concerning or relating to the use of a designated room or area in the facility at 95 Barnes Road, Wallingford, CT for (a) prayer or (b) practicing any aspect of the Muslim Religion.

**Objection**: In addition to the general objections, Defendant objects to this [Request] because it is overbroad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. The Request is also vague, ambiguous, and confusing as to the phrase "practicing any aspect of the Muslim religion." Defendant also objects to this Request to the extent it calls for the production of information or documents protected by the attorney-client privilege or the work-product doctrine.

**Response**: Subject to and without waiving the foregoing objections, Defendant is not in custody, control or possession of any non-privileged documents.

**Request 10**: All documents concerning or relating to the restriction of use of any restroom in the facility at 95 Barnes Road, Wallingford, CT.

**Objection**: In addition to the general objections, Defendant objects to this Request because it is overbroad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. The request for "all" documents is overbroad. Moreover, the term "restriction" is vague, ambiguous, and susceptible to multiple interpretations. For example, the request is drafted so broadly that it could be construed to include any documents relating to a distinction between men's and women's bathrooms. Such documents, if they exist, are irrelevant to Plaintiff's claims. Defendant also objects to this Request to the extent it calls for the production of information or documents protected by the attorney-client privilege or work-product doctrine.

> **Response**: Subject to and without waiving the foregoing
> objections, Defendant is not in custody, control, or
> possession of any non-privileged documents concerning any
> alleged "Muslim only" bathroom or "Muslim men only"
> bathroom.

[Doc. #68-1, 9-10]. At the March 2 conference, plaintiff claimed
that these requests were all derivative of deposition testimony
concerning a Muslim prayer room, Muslim men's only bathroom, and
an Iftar[4]. Defendant reiterated its response that there are no
documents responsive to the above requests. Defendant also
contended that witnesses with the proper foundational knowledge,
such as the company's CEO and CFO, testified that there was no
Muslim prayer room. With respect to the Iftar, defendant
conceded that this occurred, but two years after the termination
of plaintiff's employment.

The Court will not compel defendant to respond to these
requests in light of its response above and its representations
during the March 2 conference. With respect to requests 9 and
10, the Court agrees that the requests as phrased are overbroad
in temporal scope. Request 10 is also overbroad in substantive
scope because as phrased it could potentially implicate a large
number of documents that have no relevance to the issues in this
case. Accordingly, the Court generally sustains defendant's
objections to requests 9 and 10. To the extent that there was
testimony concerning an Iftar, the Court will not require
defendant to produce documents relating thereto, given the
representation that the Iftar occurred two years after
plaintiff's termination.

---

[4] Per defendants, an Iftar is "a breaking of the fast in Ramadan." [Doc. #75,
19 n. 13].

Request 11 seeks the production of, "Any document created
in the last five years by defendant Tariq Farid or any other
member of Edible Arrangement's management sent to any Edible
Arrangements employee that mentions, refers or relates to (a)
the Muslim religion, (b) Muslim traditions, (c) Muslim holidays,
(d) Muslim prayer, or (e) any Muslim issue or concern." [Doc.
#68-1, 9]. Defendant objected,

> In addition to the general objections, Defendant objects to
> this Request because it is overbroad, unduly burdensome,
> ambiguous, and not reasonably calculated to lead to the
> discovery of admissible evidence. The request is overbroad
> with respect to the Request to produce "any" document
> "created in the last five years by… Tariq Farid or any
> other member of… management…" Defendant also objects to the
> request for document[s] that "mentions, refers or relates
> to (a) the Muslim religion, (b) Muslim traditions, (c)
> Muslim holidays, (d) Muslim prayer, or (e) any Muslim issue
> or concern" as vague, ambiguous, and susceptible [to]
> multiple interpretations. Defendant also objects to the
> temporal scope of the Request as it is not limited to the
> relevant timeframe. Defendant also objects to this Request
> to the extent it calls for the production of information or
> documents protected by the attorney-client privilege or the
> work-product doctrine.

[Doc. #68-1. 9-10 (brackets added)]. Plaintiff contends that
this inquiry is relevant in light of the specific claims of
religious discrimination and favoritism of Muslim employees.
Defendant stands by its objections and further notes that
besides the above-mentioned Iftar, Mr. Farid confirmed there
would be no documents concerning corporate events with a "Muslim
component" for the relevant time frame of plaintiff's
employment. [Doc. #75, 19 n. 13].

The Court agrees that request 11 as phrased is overbroad in
both temporal and substantive scope. Indeed, as noted by
defendants, the request implicates a period that is irrelevant
to plaintiff's employment. Also, as phrased, the request seeks

potentially irrelevant and burdensome information and is subject to different interpretation. Accordingly, the Court SUSTAINS defendant's objections to request 11 as phrased.

Accordingly, plaintiff's motion to compel the production of documents responsive to requests 9, 10 and 11 is DENIED.

### 4. Request for Order

On December 10, 2014, the Court held a telephone conference to address objections raised during Mr. Farid's deposition. [Doc. #64]. During the call, the Court ruled on objections made to a line of questioning concerning defendants' financial status. The Court found that inquiry into the defendants' financial status was premature in light of its representation that a motion for summary judgment as forthcoming. Plaintiff contends the Court ruled that inquiry into defendants' financial status would be permitted if the motion for summary judgment were denied, and that such discovery would be at defendants' expense. Plaintiff "seeks a formal order embodying this ruling." The Court declines to make such a "formal order" at this time. To the extent plaintiff seeks defendants' financial information following a ruling on the motion for summary judgment, it may file a motion to compel with a request for reimbursement of expenses, after conferring with defendants.

### 5. Sanctions

Finally, both plaintiff and defendant seek reimbursement for the fees incurred in preparing, or opposing, the motion to compel. The Court declines to make such an award at this time.

**D.   Conclusion**

    Accordingly, for reasons stated, the Court GRANTS in part and DENIES in part plaintiff's motion to compel.[5] To the extent that the Court has ordered the production of documents or sworn statements, defendant will make such production within twenty (20) days of this ruling.

    ENTERED at Bridgeport, this 27th day of March 2015.

                        /s/
                        HOLLY B. FITZSIMMONS
                        UNITED STATES MAGISTRATE JUDGE

---

[5] This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.